## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NORMAN McINTOSH, | ) | |
| | ) | Case No. 20 CV 324 |
| Plaintiff, | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| CHICAGO POLICE OFFICERS CHESTER | ) | |
| BACH (STAR #20438), DAVID EVANS | ) | |
| (STAR #20927), JOSEPH FRUGOLI (STAR | ) | |
| #21325) | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |
| | ) | |

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
### TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Chester Bach ("Bach"), David Evans ("Evans") and Joseph Frugoli

("Frugoli") (collectively "Defendants"), by their attorneys, THE SOTOS LAW FIRM, P.C.,

answer Plaintiff's First Amended Complaint as follows:*

### INTRODUCTION

1.     Plaintiff Norman McIntosh was wrongfully convicted of the 2001 shooting death
of Devon Hobson. Plaintiff was totally innocent of the crime and was convicted as a direct result
of Defendants' egregious police misconduct.

**ANSWER:**     Upon information and belief, Defendants admit that Plaintiff Norman

McIntosh was convicted of the 2001 shooting death of Devon Hobson.  Defendants deny they

engaged in police misconduct, egregious or otherwise, at all times relevant hereto, and deny

Plaintiff was wrongfully convicted as a direct result of their egregious police misconduct.

---

\*   This case is a re-filing of *Norman McIntosh v. City of Chicago, et al.*, Case No. 17 CV 6357.

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 1.

2.      Almost two months after the crime, Defendants had no leads, so they conspired to
frame Plaintiff. Lacking any physical evidence or any other evidence whatsoever tying Plaintiff
to the crime, Defendants manipulated and coerced three witnesses – the victim's brother and two
12 year-old boys – into falsely identifying McIntosh as the shooter. In order to cover their tracks,
Defendants created false police reports and other fabricated evidence.

**ANSWER:**      Defendants deny the allegations in paragraph 2.

3.      All three witnesses ultimately recanted their identifications of McIntosh. They all
admitted that they did not believe McIntosh was involved in the murder of Devon Hobson, and
that the only reason they identified him was because of police manipulation and coercion.

**ANSWER:**      Defendants deny the allegations that they engaged in police manipulation

and coercion in the witnesses' identification of Plaintiff as the murderer of Devon Hobson.

Upon information and belief, Defendants admit witnesses James Hobson, Darius Thompson and

Aaron Smith have since recanted their identifications of McIntosh, but lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3.

4.      Devon Hobson was actually shot and killed by a man named Charles "Eggy"
Smith. Indeed, Smith's fingerprints were found on items that Hobson had taken from the shooter
shortly before the crime, and Smith drove a car identical to the one described by all three
witnesses.

**ANSWER:**      Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 4.

5.      There is only one reason that three different witnesses all wrongly identified
McIntosh as the shooter in a crime he had nothing to do with and that reason was Defendants'
misconduct. This misconduct resulted in Plaintiff being wrongfully convicted and sentenced to
45 years in prison.

**ANSWER:**      Upon information and belief, Defendants admit Plaintiff was convicted

and sentenced to 45 years in prison.  Defendants deny the remaining allegations in paragraph 5.

6.      After approximately 15 years in prison, Plaintiff was finally vindicated. Because
of the overwhelming evidence pointing to Charles Smith's guilt and Plaintiff's innocence, the

State moved to dismiss all charges against Plaintiff. His conviction was vacated and he was set free on October 4, 2016.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as the truth of the allegations in paragraph 6.

7. Plaintiff now brings this action to obtain justice and redress for the devastating injuries that Defendants have caused him.

**ANSWER:** Defendants admit Plaintiff has filed a complaint seeking monetary damages, but deny they caused Plaintiff injuries and deny they are liable for any of the claims and damages alleged in this complaint.

## JURISDICTION AND VENUE

8. This action is brought pursuant to 42 U.S.C. § 1983 to redress Defendants' deprivation of Plaintiff's rights secured by the U.S. Constitution.

**ANSWER:** Defendants admit this action is brought pursuant to 42 U.S.C. §1983. Defendants deny the remaining allegations in paragraph 8, and deny Plaintiff is entitled to relief.

9. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:** Defendants admit the allegations in paragraph 9.

10. Venue is proper under 28 U.S.C. § 1391(b). The events and omissions giving rise to Plaintiff's claims occurred within this judicial district, and many if not all of the Defendants reside in this judicial district.

**ANSWER:** Defendants admit venue is proper under 28 U.S.C. §1391(b), as the alleged events giving rise to the Plaintiff's claims occurred within this judicial district, and the Defendants reside in this judicial district.

## PARTIES

11. Plaintiff Norman McIntosh, who lived in the City of Chicago at the time of the events at issue, spent approximately 15 years in prison for a crime he did not commit.

3

**ANSWER:**     Upon information and belief, Defendants admit that Plaintiff lived in the City of Chicago at the time of the events at issue.  Defendants lack knowledge or information sufficient to form a belief as to remaining allegations in paragraph 11.

12.     At all times relevant hereto, Defendants Chester Bach (Star No. 20438), David Evans (Star No. 20927), and Joseph Frugoli (Star No. 21325) ("Police Officer Defendants") were police officers in the Chicago Police Department acting under color of law and within the scope of their employment for the City of Chicago.[1]

**ANSWER:**     Defendants admit at all times relevant hereto they each were Chicago Police Department officers acting under color of law and within the scope of their employment for the City of Chicago.

As to Plaintiff's footnote 1, Defendants admit the City of Chicago is an Illinois municipal corporation and was the employer of each of them at all times relevant hereto.  Defendants admit the City of Chicago is obligated under Illinois law to indemnify them for any judgment of compensatory damages arising from their acts or omissions while acting within the scope of their employment, but deny the remaining allegations in Plaintiff's footnote 1.

## FACTS
### The Hobson Murder

13.     At approximately 9:39 am on November 24, 2001, 21-year old Devon Hobson was shot and killed at 1832 West 60th Street on the South side of Chicago. At the time he was shot, Devon Hobson was with his older brother, James Hobson; his 12-year old cousin, Darius Thompson; and Darius's 12-year old friend, Aaron Smith.

**ANSWER:**     Upon information and belief, Defendants admit at approximately 9:39 am on November 24, 2001, Devon Hobson was shot at or near 1832 West 60th Street on the South side of Chicago, and subsequently died.  Upon information and belief, Defendants admit at the

---

[1]     The City of Chicago is an Illinois municipal corporation and is and/or was the employer of each of the individual Defendants. In the event of a judgment against any of the individual Defendants, the City of Chicago will be liable for the acts of the individual Defendants while acting within the scope of their employment for the City.

time he was shot, Devon Hobson was with his older brother, James Hobson; his 12-year old

cousin, Darius Thompson; and Darius's 12-year old friend, Aaron Smith. Defendants deny the

remaining allegations in paragraph 13.

14.     Earlier that day, Devon Hobson, James Hobson, Darius Thompson and Aaron
Smith robbed a man driving a four-door gray Oldsmobile at gunpoint. They pretended to be
selling marijuana on the corner, and when the vehicle stopped they robbed him. They took
money, drugs, and compact discs. After being robbed, the man in the car announced
that he was a member of a street gang, and that he was going to come back and kill them.

**ANSWER:**     Upon information and belief, Defendants admit earlier that day, Devon

Hobson, James Hobson, Darius Thompson and Aaron Smith robbed a man driving what was

described as an unknown make gray or silver car, with a blue driver's door at gunpoint. Upon

information and belief, Defendants admit Devon Hobson, James Hobson, Darius Thompson and

Aaron Smith pretended to be selling marijuana on the corner, and when the vehicle stopped they

robbed the driver of the car, and took money, drugs, and compact discs. Upon information and

belief, Defendants admit that after being robbed, the man in the car announced that he was a

member of a street gang, and that he was going to come back and kill them. Defendants lack

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in paragraph 14.

15.     A short time after the robbery, the four boys were walking down the street and
saw the same four-door Oldsmobile driving up. The same man they had robbed earlier was now
holding a gun. The man shot at the boys as they ran away, hitting James Hobson and Devon
Hobson. James survived, but Devon lost his life.

**ANSWER:**     Upon information and belief, Defendants admit a short time after the

robbery, the Hobson brothers, Smith, and Thompson were walking down the street and saw the

same gray or silver car driving up, and the same man they had robbed earlier was now holding a

gun. Upon information and belief, Defendants admit the man shot at the Hobson brothers,

Smith, and Thompson as they ran away, that the shots hit James Hobson and Devon Hobson, and

that James survived, but Devon lost his life. Defendants lack knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in paragraph 15.

### Defendants' Initial Investigation

16.     Defendants Evans, Bach, and Frugoli – Area 1 detectives and investigators – were
among those initially assigned to investigate the death of Devon Hobson. They interviewed the
three boys who survived, all of whom had observed the shooter but had never seen him before
that day and did not know who he was. Other than a general physical description of the shooter
and the vehicle, they could not identify the shooter.

**ANSWER:**     Defendant Bach admits that he was an Area 1 detective and was initially

assigned to investigate the shooting incident that occurred at or near 1832 West 60th Street on

November 24, 2001. Defendant Bach further admits Defendants Evans and Frugoli were Area 1

detectives who assisted in the initial investigation. Defendant Bach admits he interviewed Aaron

Smith and Darius Thompson, and they indicated they observed the shooter who they could not

identify by name, but were able to give a description of the shooter and the vehicle. Upon

information and belief, Defendant Bach admits James Hobson was interviewed by other

detectives, and Hobson indicated he observed the shooter who he could not identify by name, but

was able to give a description of the shooter and the vehicle. Defendant Bach is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in paragraph 16.

Defendants Evans and Frugoli admit Defendant Bach was an Area 1 detective initially

assigned to investigate the shooting incident that occurred at or near 1832 West 60th Street on

November 24, 2001, and further admit they were Area 1 detectives who assisted in the initial

investigation. Upon information and belief, Defendants Evans and Frugoli deny they

interviewed Aaron Smith, Darius Thompson and James Hobson following the incident. Upon

information and belief, Defendants Evans and Frugoli admit that Defendant Bach interviewed

Aaron Smith and Darius Thompson, that James Hobson was interviewed by other detectives, and

that Smith, Thompson and Hobson indicated they each observed the shooter who they could not

identify by name, but were able to give a description of the shooter and the vehicle. Defendants

Evans and Frugoli are without knowledge or information sufficient to form a belief as to the truth

of the remaining allegations in paragraph 16.

17.     By early January 2002, the Police Officer Defendants had no significant leads.

**ANSWER:**     Defendant Bach denies the allegations in paragraph 17. Upon information

and belief, Defendants Evans and Frugoli deny the allegations in paragraph 17.

18.     They thereafter conspired among themselves, and with others, to frame Plaintiff
for the murder.

**ANSWER:**     Defendants deny the allegations in paragraph 18.

19.     On or about January 9, 2002, Defendants Bach and Evans showed up at James
Hobson's house without warning and showed him a photo array containing approximately five
photographs, one of which was a picture of Plaintiff. James did not believe Plaintiff or any of the
other individuals pictured was the shooter. When James told this to Defendants Bach and Evans,
they told him to pick the photograph of Plaintiff. They told James that Plaintiff was the person
that had shot and killed his brother, Devon, and that Plaintiff had been caught riding in the same
four-door Oldsmobile. Based on this and other unduly coercive and suggestive tactics, James
Hobson selected the photograph of Plaintiff.

**ANSWER:**     Defendant Bach admits that on or about January 9, 2002, he met with

James Hobson at Hobson's residence and showed him a photo array containing a photo of

Plaintiff and four non-suspects, and that James Hobson identified the photo of Plaintiff as the

person who shot and killed his brother, Devon Hobson, and shot at him. Defendant Bach denies

Defendant Evans accompanied him. Defendant Bach denies the remaining allegations in

paragraph 19. Upon information and belief, Defendants Evans and Frugoli admit that on or

about January 9, 2002, Defendant Bach met with James Hobson at Hobson's residence and

showed him a photo array containing a photo of Plaintiff and four non-suspects, and that James

Hobson identified the photo of Plaintiff as the person who shot and killed his brother, Devon Hobson, and shot at him. Defendant Evans denies he accompanied Bach, and upon information and belief denies the remaining allegations in paragraph 19. Upon information and belief, Defendant Frugoli denies the remaining allegations in paragraph 19.

20. None of these improper tactics were documented in police reports or otherwise disclosed to Plaintiff.

**ANSWER:** Defendants deny they engaged in improper tactics, and deny the remaining allegations in paragraph 20.

21. Based on this manipulated identification from a photo array, on January 16, 2002, the Police Officer Defendants had Plaintiff arrested and brought to the Area 1 Detective Division.

**ANSWER:** Defendants admit Plaintiff was arrested on January 16, 2002 and transported to Area 1 Violent Crimes for further investigation, but deny the remaining allegations in paragraph 21.

22. At the time of Plaintiff's arrest, the Police Officer Defendants had no probable cause and no legitimate evidence or other non-fabricated reasons to suspect Plaintiff of the Hobson murder. Plaintiff's name had not come up during the investigation at any prior point, and there was no physical evidence tying Plaintiff to the crime in any way.

**ANSWER:** Defendants deny the allegations in paragraph 22.

23. On January 17, 2002, the Police Officer Defendants rounded up James Hobson, Darius Thompson, and Aaron Smith and brought them to Area 1 Detective Division to view lineups containing Plaintiff.

**ANSWER:** Defendants admit that on January 17, 2002, Darius Thompson was transported to Area 1 Detective Division and Aaron Smith arrived at Area 1 Detective Division and that they each separately viewed lineups containing Plaintiff. Defendants deny the remaining allegations in paragraph 23.

24. James Hobson went first. Again using unduly suggestive and coercive tactics, the Police Officer Defendants manipulated James into selecting Plaintiff. Before the lineup the Police Officer Defendants showed James the same pictures of Plaintiff that they had previously

shown him at his house. They also told him – falsely – that Plaintiff had been caught driving a car like the one the shooter was driving when Devon Hobson was shot. James Hobson then viewed the lineup and selected Plaintiff.

**ANSWER:**     Defendant Evans admits that on January 18, 2002, James Hobson viewed

a lineup containing Plaintiff and other participants at Area 1 Detective Division and that Hobson

identified Plaintiff.  Defendant Evans denies the remaining allegations in paragraph 24, and also

denies Plaintiff's chronology of events.  Upon information and belief, Defendants Bach and

Frugoli admit that on January 18, 2002, James Hobson viewed a lineup containing Plaintiff and

other participants at Area 1 Detective Division and that Hobson identified Plaintiff.  Defendants

Bach and Frugoli deny the remaining allegations in paragraph 24, and also deny plaintiff's

chronology of events.

25.     In addition to the unduly suggestive and coercive tactics set forth above, the Police Officer Defendants threatened to charge James for the initial armed robbery of the shooter if he did not help them to frame Plaintiff.

**ANSWER:**     Defendants deny the allegations in paragraph 25.

26.     Also on January 17, 2002, the Police Officer Defendants' unduly suggestive and coercive tactics continued in the subsequent lineups viewed by Darius Thompson and Aaron Smith, both of whom were only 12 years old.

**ANSWER:**     Defendants admit that on January 17, 2002, thirteen year old Darius

Thompson and twelve year old Aaron Smith each separately viewed lineups containing Plaintiff

and other participants.  Defendants deny the remaining allegations in paragraph 26, and deny

Plaintiff's chronology of events.

27.     As they had done with James Hobson, the Police Officer Defendants showed Thompson photographs of several individuals, including Plaintiff. Thompson did not believe that Plaintiff or any of the other individuals pictured was the shooter. The Police Officer Defendants then pointed to the picture of Plaintiff and told him that Plaintiff was the shooter.

**ANSWER:**    Defendants admit that on January 17, 2002 Darius Thompson viewed a lineup containing Plaintiff and other participants and that Thompson identified Plaintiff. Defendants deny the remaining allegations in paragraph 27.

28.    In addition, at the time of the first lineup viewed by James Hobson, Plaintiff was wearing a red shirt. He was the only person in the lineup wearing a red shirt. After the first lineup, the Police Officer Defendants caused James Hobson to come into contact with Darius Thompson and Aaron Smith, and in the Police Officer Defendants' presence, James told the two 12-year old boys to pick the person in the red shirt.

**ANSWER:**    Defendant Evans admits that on January 18, 2002, James Hobson viewed a lineup containing Plaintiff and other participants, that Plaintiff was wearing a black hooded sweatshirt with a red shirt underneath, and that the other participants in the lineup were not wearing a black hooded sweatshirt with a red shirt underneath.  Defendant Evans denies the remaining allegations in paragraph 28, and also denies Plaintiff's chronology of events.  Upon information and belief, Defendants Bach and Frugoli admit that on January 18, 2002, James Hobson viewed a lineup containing Plaintiff and other participants, that Plaintiff was wearing a black hooded sweatshirt with a red shirt underneath, and that the other participants in the lineup were not wearing a black hooded sweatshirt with a red shirt underneath.  Defendants Bach and Frugoli deny the remaining allegations in paragraph 28, and also deny plaintiff's chronology of events.

29.    After viewing photos of Plaintiff and being fed information by James Hobson, Darius Thompson and Aaron Smith each viewed lineups that included Plaintiff in a red shirt. They each selected Plaintiff. They did so based only on the information that was fed to them.

**ANSWER:**    Defendants admit that on January 17, 2002, Darius Thompson and Aaron Smith each separately viewed lineups that included Plaintiff in a red shirt and other participants, and that Thompson and Smith each separately identified Plaintiff.  Defendants deny the remaining allegations in paragraph 29, and deny Plaintiff's chronology of events.

30.     At no time did the Police Officer Defendants or any other officer document any of their identification and lineup shenanigans involving James Hobson, Darius Thompson and Aaron Smith. That information was concealed from Plaintiff.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding and directed at "any other officer." Defendants deny any alleged identification and lineup shenanigans involving James Hobson, Darius Thompson and Aaron Smith, and therefore deny the remaining allegations in paragraph 30.

### The Police Officer Defendants Cover Up Their Misconduct

31.     Concerned that James Hobson, Darius Thompson, or Aaron Smith might later reveal the truth – that Plaintiff was not the shooter and they only picked him in lineups because of egregious police misconduct – the Police Officer Defendants set out to cover up their January 17 lineup misconduct.

**ANSWER:**     Defendants deny the allegations in paragraph 31.

32.     Among other things, they concealed documentation and evidence showing that James Hobson, Darius Thompson, and Aaron Smith were all at the Area 1 Detective Division at the same time on January 17, and that James Hobson had viewed a first lineup that day. They did so by drafting a series of fabricated police reports and lineup photos to make it appear as though James Hobson did not view a lineup until January 18 (and therefore could not have fed information to Darius Thompson and Aaron Smith on January 17).

**ANSWER:**     Defendants deny the allegations in paragraph 32.

33.     The Police Officer Defendants knew that the reports, and statements contained therein, were manufactured.

**ANSWER:**     Defendants deny the allegations in paragraph 33.

34.     As set forth below, years after Plaintiff's conviction, James Hobson, Darius Thompson, and Aaron Smith came forward and revealed the full extent of the Defendants' misconduct.

**ANSWER:**     Defendants deny any misconduct as alleged herein, and lack knowledge or information sufficient to form a belief as the truth of the remaining allegations in paragraph 34.

## Plaintiff's Trial and Wrongful Conviction

35.     In December 2003, following a bench trial in the Circuit Court of Cook County, Plaintiff was wrongfully convicted of the murder of Devon Hobson. Plaintiff was sentenced to a 45-year term of imprisonment in the Illinois Department of Corrections. Defendant Evans was called as prosecution witness at that trial and testified falsely in furtherance of the scheme to convict Plaintiff of murder without regard to Plaintiff's guilt or innocence.

        **ANSWER:**     Defendants admit in December 2003, following a July 2003 bench trial in the Circuit Court of Cook County, Plaintiff was convicted of the murder of Devon Hobson and sentenced to a 45-year term of imprisonment in the Illinois Department of Corrections. Defendant Evans admits he was called as a prosecution witness during the trial.  Defendant Evans denies the remaining allegations in paragraph 35.  Upon information and belief, Defendants Bach and Frugoli admit Evans was called as a prosecution witness at trial. Defendants Bach and Frugoli deny the remaining allegations in paragraph 35.

36.     Without Defendants' misconduct set forth above, Plaintiff would never have been prosecuted for or convicted of Devon Hobson's murder.

        **ANSWER:**     Defendants deny the allegations in paragraph 36.

37.     In addition, neither Plaintiff nor his criminal defense counsel was aware at the time of Plaintiff's criminal trial of the concealment of evidence, fabrication of evidence, and manipulation of eyewitnesses that is set forth in this Complaint. Had these facts been disclosed, Plaintiff would not have been convicted.

        **ANSWER:**     Defendants deny they concealed evidence, fabricated evidence, and manipulated eyewitnesses as alleged in this Complaint.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37.

## Plaintiff's Innocence and Eventual Exoneration

38.     From the first time Plaintiff was questioned by police to this day, he has always maintained his innocence, because he is innocent.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as the truth of the allegations in paragraph 38.

39. Other than false and fabricated evidence, there has never been probable cause, or any legitimate basis whatsoever, for Plaintiff's arrest, prosecution, and conviction. There was no fingerprint, ballistic, or firearms evidence pointing to Plaintiff. Any such evidence pointed away from Plaintiff: for example, the items that the four boys had stolen from the shooter were recovered by the police; Plaintiff's fingerprints were not on any of the items.

**ANSWER:** Upon information and belief, Defendants admit that Plaintiff's fingerprints were not identified from the latent fingerprints suitable for comparison on the compact disc evidence recovered by the police, but lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the fingerprint evidence relating to the other items stolen by James Hobson, Devon Hobson, Darius Thompson and Aaron Smith during the robbery. Defendants deny they falsified and/or fabricated evidence, and deny the remaining allegations in paragraph 39.

40. Ample additional evidence available to the police made it all the more clear that Plaintiff was not the perpetrator. James Hobson, Darius Thompson, and Aaron Smith observed the shooter driving a four-door Oldsmobile, but Plaintiff owned a two-door Oldsmobile at the time. Furthermore, Plaintiff's two-door car had been towed by the City's Streets and Sanitation department in September 2001 and remained in the City's tow lot until it was destroyed in April 2002.

**ANSWER:** Defendants deny ample additional evidence available to the police made it all the clearer that Plaintiff was not the perpetrator. Upon information and belief, Defendants admit James Hobson, Darius Thompson and Aaron Smith described the car the perpetrator was driving to police as a four-door car, but deny they told police it was an Oldsmobile. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 43.

41. Plaintiff also had an alibi. On the morning of the shooting, Plaintiff's girlfriend, Iashiskala Sims, drove him to Mercy Hospital for medical treatment related to an infection.

Plaintiff was discharged from the hospital after 7:00 am. Sims drove Plaintiff from the hospital to her house, in her car. They spent the rest of the day together.

>    **ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

>    42.    Throughout his wrongful incarceration, Plaintiff worked tirelessly to establish that he was innocent and wrongfully convicted of the Hobson murder.

>    **ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

>    43.    Finally, approximately a decade after Plaintiff's wrongful conviction, James Hobson came forward and revealed that Plaintiff was not the person he had observed shoot his brother Devon, and that the only reason he had identified Plaintiff was because of the unduly suggestive and coercive tactics set forth above. Hobson provided sworn testimony to this effect, and admitted to telling Darius Thompson to pick the person in the red shirt.

>    **ANSWER:**    Defendants deny they participated in any "unduly suggestive and coercive tactics" or other misconduct as alleged herein.  Upon information and belief, Defendants admit James Hobson recanted his identification of Plaintiff as the person who shot Devon Hobson, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 43.

>    44.    Darius Thompson and Aaron Smith also came forward and admitted that Plaintiff was not the person they observed shooting Devon Hobson, and that they only identified Plaintiff because they had been told to do so.

>    **ANSWER:**    Defendants deny they told Darius Thompson and Aaron Smith to identify Plaintiff as the person they observed shooting Devon Hobson, and deny they engaged in any other misconduct as alleged herein.  Upon information and belief, Defendants admit Darius Thompson and Aaron Smith recanted their identifications of Plaintiff as the person who shot Devon Hobson, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 44.

14

45.     James Hobson further revealed that he had received credible information that the person who had shot his brother was a man named Charles "Eggy" Smith. Further investigation revealed that Charles Smith's fingerprints were found on the items that had been stolen from the shooter, and that at the time of Devon Hobson's murder, Charles Smith drove a four-door Oldsmobile that matched the description of the shooter's car.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as

the truth of the allegations in paragraph 45.

46.     Finally, in October 2016, faced with overwhelming evidence of Plaintiff's innocence and Charles Smith's guilt, the Cook County State's Attorney's Office requested that Plaintiff's conviction be vacated. The State's Attorney's Office made the request only after it had conducted a reinvestigation of the case and determined that it could not stand by the conviction based on the evidence.

**ANSWER:**     Upon information and belief, Defendants admit Plaintiff's conviction was

vacated.  Defendants lack knowledge or information sufficient to form a belief as to the truth of

the remaining allegations in paragraph 46.

47.     On October 4, 2016, Cook County Circuit Court Judge Evelyn Clay, who convicted Plaintiff at his original trial, granted the motion to vacate the conviction and dismiss all charges. Upon issuing her ruling, she apologized to Plaintiff's family and stated, "[A]n injustice has been corrected."

**ANSWER:**     Upon information and belief, Defendants admit that Plaintiff's conviction

was vacated.  Defendants lack knowledge or information sufficient to form a belief as to the truth

of the remaining allegations in paragraph 47.

### Plaintiff's Injuries

48.     During his fifteen years of wrongful imprisonment, Plaintiff was deprived of the ability to interact freely with his loved ones; to be present for holidays, births, deaths, and other life events; to pursue his passions and interests; to engage in meaningful labor and develop a career; and to live freely as an autonomous being.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 48.

15

49.     As but one example of the nightmare he endured, Plaintiff's son was born eight months after his conviction. For the first 15 years of his son's life, Plaintiff could interact with him only within the impersonal confines of a prison visiting room.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.

50.     Plaintiff was detained in harsh, dangerous, and isolating conditions in maximum security prisons. He was branded a murderer.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51.     As a result of his wrongful conviction and incarceration, Plaintiff must now attempt to rebuild his life outside of prison - all without the benefit of the life experiences that ordinarily equip adults for such a task.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

52.     In addition to causing the severe trauma of Plaintiff's wrongful imprisonment and loss of liberty, Defendants' misconduct caused and continues to cause Plaintiff extreme physical and psychological pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, and other physical and psychological effects.

**ANSWER:**     Defendants deny the allegations in paragraph 52.

**Policy and Practice of Prosecuting Innocent Persons in Violation of Due Process**

Defendants deny the existence of any policy and practice claim against the City of Chicago as alleged in paragraphs 53 through 59, or as incorporated herein by reference, as the City of Chicago was dismissed from this action with prejudice on July 19, 2019 in Case No. 17 CV 6357 (Doc. #133).

53.     The Chicago Police Department is responsible for scores of miscarriages of justice. Since 1986, no fewer than 70 documented cases have come to light in which Chicago Police Detectives amassed "evidence" against an innocent person for a serious crime that he did not commit. There are undoubtedly many more such cases that have not yet been discovered.

**ANSWER:** The allegations in this paragraph are directed against the City of Chicago, which was dismissed from this action with prejudice on July 19, 2019. Defendants deny any allegations in paragraph 53 to the extent they are directed against them. Defendants lack knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 53.

54. The false charges against innocent people include numerous cases in which Chicago Police Officers used the very same tactics that Defendants employed against Plaintiff in this case, including: (1) procuring false witness testimony; (2) concealment of exculpatory evidence; (3) manipulation of witnesses in order to obtain false identifications; (4) manipulation of witnesses in order to influence their testimony; and (5) the use of other tactics to secure the arrest, prosecution, and conviction of a person without regard to his actual guilt or innocence of the offense.

**ANSWER:** The allegations in this paragraph are directed against the City of Chicago, which was dismissed from this action with prejudice on July 19, 2019. Defendants deny the allegations in paragraph 54 directed against them. Defendants lack knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 54.

55. At all times relevant hereto, members of the Chicago Police Department, including the Defendants in this action, routinely manufactured evidence against innocent persons by coercing, manipulating, threatening, pressuring, and offering inducements to witnesses to obtain false witness statements implicating innocent persons, knowing full well that those statements were false. As a matter of widespread custom and practice, members of the Chicago Police Department, including the Defendants in this action, contrived false witness narratives that were fed to vulnerable witnesses, including juveniles, who then adopted those false witness narratives as their own for the purpose of wrongly convicting an innocent person. Furthermore, Chicago Police Department officers systematically suppressed exculpatory and/or impeaching material by concealing evidence that a witness was coerced, manipulated, threatened, pressured, or offered inducements to make false statements.

**ANSWER:** The allegations in this paragraph are directed against the City of Chicago, which was dismissed from this action with prejudice on July 19, 2019. Defendants deny knowledge or information of the customs and/or practices asserted in this paragraph, and they therefore deny the allegations of paragraph 55 based on those assertions. Defendants deny the

allegations in paragraph 55 directed against them. Defendants lack knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 55.

56.     Members of the Chicago Police Department acted with impunity when they violated the constitutional and civil rights of citizens, including at the time of Plaintiff's arrest and prosecution.

**ANSWER:**     The allegations in this paragraph are directed against the City of Chicago, which was dismissed from this action with prejudice on July 19, 2019. Defendants deny they violated the constitutional and civil rights of citizens, including Plaintiff's, and deny the remaining allegations in paragraph 56 directed against them. Defendants lack knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 56.

57.     This includes Defendants in this case. By way of example, Defendant Frugoli was indicted and found guilty in a drunk driving incident that led to the death of two individuals. Frugoli was off duty drinking with fellow officers at a tavern in Chicago. He got intoxicated, left the tavern, and then struck a car pulled over on the side of the road, killing both passengers. Instead of calling for help, Frugoli got out of his car and fled on foot. Frugoli was eventually apprehended with a blood alcohol level of 0.277 – over three times the legal limit. Frugoli had previously been involved in several alcohol related incidents that were covered up by the Chicago police. Frugoli was involved in an auto accident where the contributory causes were speeding and consumption of alcohol. Frugoli also drove a police car into a concrete barrier. And Frugoli was involved in an auto accident in which, after becoming intoxicated, he failed to stop at a stop sign, struck a Chicago police car, and injured an on-duty Chicago police officer. The Chicago Police failed to discipline Frugoli for these incidents.

**ANSWER:**     Defendants deny that they acted with impunity regarding the constitutional and civil rights of citizens, including at the time of Plaintiff's arrest and prosecution. Defendants deny the allegations are an example of Defendants acting with impunity regarding the constitutional and civil rights of citizens, including Plaintiff's. Upon information and belief, Defendants Bach and Evans admit Defendant Frugoli was convicted of a drunk driving incident involving the deaths of two individuals, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations regarding Defendant Frugoli in paragraph 57.

18

Defendant Frugoli admits he was involved in a traffic incident that resulted in the deaths of two individuals, that he was subsequently indicted, pleaded guilty to aggravated DUI, and was found guilty of leaving the scene of an accident. Defendant Frugoli further admits he was off-duty and drinking at two establishments, including a tavern in Chicago, but denies the remaining allegations in the third sentence of paragraph 57. Defendant Frugoli admits he got intoxicated, left the tavern, and then struck a car stopped in a lane of traffic, killing both passengers, but denies the remaining allegations in the fourth sentence of paragraph 57. Defendant Frugoli admits he did not call for help, was pulled out of his car, and walked away from the scene, but denies the remaining allegations in the fifth sentence of paragraph 57. Defendant Frugoli admits he was eventually apprehended and found to have a blood alcohol level above the legal limit, and upon information and belief admits his blood alcohol level was over three times the legal limit, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the sixth sentence of paragraph 57. Defendant Frugoli denies the allegations in the seventh sentence of paragraph 57. Defendant Frugoli lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the eighth sentence of paragraph 57. Defendant Frugoli admits he was involved in an accident in which the police vehicle he was driving skidded on ice and hit an object other than a concrete barrier, but denies the remaining allegations in the ninth sentence of paragraph 57. Defendant Frugoli admits he was involved in an auto accident in which failed to stop at a stop sign, struck a Chicago police car, and injured an on-duty Chicago police officer, but denies the remaining allegations in the tenth sentence of paragraph 57. Defendant Frugoli admits that no discipline was imposed against him for the incident involving the two fatalities because he resigned during the pendency of the investigation, and that upon information and belief no discipline was imposed against him for the

19

other incidents which he had knowledge of as alleged in this paragraph, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the last sentence of paragraph 57. Defendant Frugoli denies any remaining allegations contained in paragraph 57.

58.     In addition, the Police Officer Defendants in this case have a history of engaging in the kind of investigative misconduct that occurred in this case, including the manipulation of witnesses, fabrication of evidence, and concealment of evidence in the course of maliciously prosecuting innocent persons. Examples include the following:

a.      In *People v. Pleasant*, Defendant Evans engaged in similar conduct. In that case, one of the witnesses testified that he had never viewed a lineup containing the defendant, Edward Pleasant, and that the only time he was asked to make an identification was after Defendant Evans showed him a single picture of Mr. Pleasant. Yet, the State presented evidence of a lineup photograph that Defendant Evans claimed was viewed by the witness. The witness denied it. Another witness testified that he had chosen the defendant from a photo array, but only after Defendant Evans showed him the photo array in front of other witnesses and allowed the other witnesses to tell him who to pick.

b.      Defendants Bach, Evans, and other Area 1 police officers were named in a lawsuit where Kelwyn Sellers alleged conduct almost identical the misconduct in this case. In that case, police officers put Sellers in a lineup after holding him overnight. When the witness was unable to identify Sellers, police officers manufactured a false police report claiming that the witness has identified Sellers.

**ANSWER:**     Defendants deny the allegations in paragraph 58, and deny the allegations in paragraphs 58a and 58b are examples. Defendant Evans lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58a regarding *People v. Edward Pleasant*. Defendants Bach and Frugoli lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58a regarding *People v. Edward Pleasant*. Upon information and belief, Defendants Bach and Evans admit they were named as defendants in a lawsuit brought by Kelwyn Sellers, but deny the remaining allegations in paragraph 58b. Defendant Frugoli lacks knowledge or information sufficient to form a belief as to the truth of the allegations paragraph 58b.

20

59.     The Defendants engaged in the foregoing misconduct because they had no reason to fear that the City of Chicago and its Police Department would ever discipline them for doing so.

**ANSWER:**     Defendants deny the allegations in paragraph 59.

### COUNT I – 42 U.S.C. § 1983,
### Due Process, Wrongful Conviction & Illegal Confinement (Fourteenth Amendment)

60.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**     Defendants incorporate their answers to each paragraph of this Complaint

as if fully restated here as their answer to paragraph 60.

61.     As described more fully above, the individual Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial, and his right not to be wrongfully convicted.

**ANSWER:**     Defendants admit they were acting under color of law and within the

scope of their employment at all times relevant hereto, but deny the remaining allegations in

paragraph 61.

62.     In the manner described more fully above, Defendants deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

**ANSWER:**     Defendants deny the allegations in paragraph 62.

63.     In the manner described more fully above, Defendants fabricated evidence and manufactured and solicited false evidence— including witness statements and witness testimony from James Hobson, Darius Thompson, and Aaron Smith that they knew to be false— implicating Plaintiff in the crime that they knew he did not commit; falsified police reports falsely implicating Plaintiff in the crime; obtained Plaintiff's conviction using that false evidence; and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial.

**ANSWER:**     Defendants deny the allegations in paragraph 63.

64.     In addition, based upon information and belief, Defendants concealed, fabricated, and destroyed additional evidence that is not yet known to Plaintiff.

**ANSWER:**     Defendants deny the allegations in paragraph 64.

65. Defendants' misconduct resulted directly in the unjust and wrongful criminal prosecution and conviction of Plaintiff and the deprivation of Plaintiff's liberty, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, Plaintiff's prosecution could not and would not have been pursued.

**ANSWER:** Defendants deny the allegations in paragraph 65.

66. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** Defendants deny the allegations in paragraph 66.

67. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:** Defendants deny the allegations in paragraph 67.

WHEREFORE, Defendants request judgment in their favor and against the Plaintiff,

costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT II – 42 U.S.C. § 1983
**Deprivation of Liberty without Probable Cause (Fourth and Fourteenth Amendments)**

68. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendants incorporate their answers to each paragraph of this Complaint

as if fully restated here as their answer to paragraph 68.

69. In the manner described more fully above, the individual Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

**ANSWER:** Defendants admit they were acting under color of law and within the

scope of their employment at all times relevant hereto, but deny the remaining allegations in

paragraph 69.

70.     In so doing, these Defendants caused Plaintiff to be deprived of his liberty without probable cause and subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:**     Defendants deny the allegations in paragraph 70.

71.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and with malice.

**ANSWER:**     Defendants deny the allegations in paragraph 71.

72.     As a result of the misconduct of the Defendants described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:**     Defendants deny the allegations in paragraph 72.

WHEREFORE, Defendants request judgment in their favor and against the Plaintiff,

costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

### COUNT III – 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

73.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

**ANSWER:**     Defendants incorporate their answers to each paragraph of this Complaint as if fully restated here as their answer to paragraph 73.

74.     The individual Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and deprive him of his constitutional rights by maliciously causing Plaintiff's prosecution; by fabricating evidence that would be used to convict Plaintiff; and by withholding exculpatory information from Plaintiff's defense and the prosecution, as described above.

**ANSWER:**     Defendants deny the allegations in paragraph 74.

75.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER:**     Defendants deny the allegations in paragraph 75.

76.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER:** Defendants deny the allegations in paragraph 76.

77. The misconduct described in this count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER:** Defendants deny the allegations in paragraph 77.

78. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:** Defendants deny the allegations in paragraph 78.

WHEREFORE, Defendants request judgment in their favor and against the Plaintiff,

costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT IV – 42 U.S.C. § 1983
### Failure to Intervene

79. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendants incorporate their answers to each paragraph of this Complaint

as if fully restated here as their answer to paragraph 79.

80. During the constitutional violations described herein, one or more of the individual Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

**ANSWER:** Defendants deny the constitutional violations described herein and deny

the remaining allegations in paragraph 80.

81. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER:** Defendants deny the allegations in paragraph 81.

82. As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:** Defendants deny the allegations in paragraph 82.

WHEREFORE, Defendants request judgment in their favor and against the Plaintiff,

costs of suit and attorneys' fees, and such other relief as the Court deems appropriate.

### COUNT V – State Law Claim
### Intentional Infliction of Emotional Distress

83.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**     Defendants incorporate their answers to each paragraph of this Complaint

as if fully restated here as their answer to paragraph 83.

84.     In the manner described more fully above, the individual Defendants engaged in
extreme and outrageous conduct.

**ANSWER:**     Defendants deny the allegations in paragraph 84.

85.     The Defendants either intended that their conduct would cause severe emotional
distress to Plaintiff or knew that there was a high probability that their conduct would cause
severe emotional distress to Plaintiff.

**ANSWER:**     Defendants deny the allegations in paragraph 85.

86.     The misconduct described in this Count was undertaken with malice, willfulness,
and reckless indifference to the rights of others.

**ANSWER:**     Defendants deny the allegations in paragraph 86.

87.     As a direct and proximate result of this misconduct, undertaken within the scope
of Defendants' employment, Plaintiff suffered injuries, including but not limited to emotional
distress, as is more fully alleged above.

**ANSWER:**     Defendants deny the allegations in paragraph 87.

WHEREFORE, Defendants request judgment in their favor and against the Plaintiff,

costs of suit, and such other relief as the Court deems appropriate.

### Count VI – State Law Claim
### Malicious Prosecution

88.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendants incorporate their answers to each paragraph of this Complaint as if fully restated here as their answer to paragraph 88.

89. All of the individual Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Plaintiff. All such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

**ANSWER:** Defendants deny the allegations in paragraph 89.

90. The Defendants accused Plaintiff of murdering Devon Hobson, knowing that he was innocent of the crime. Defendants fabricated evidence, manipulated witnesses, including juvenile witnesses, and withheld material exculpatory evidence. The Defendants knowingly made false statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings against Plaintiff.

**ANSWER:** Defendants deny the allegations in paragraph 90.

91. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

**ANSWER:** Defendants deny the allegations in paragraph 91.

92. As a direct and proximate result of this misconduct, undertaken within the scope of Defendants' employment, Plaintiff suffered injuries, including but not limited to severe emotional distress, as is more fully alleged above.

**ANSWER:** Defendants deny the allegations in paragraph 92.

WHEREFORE, Defendants request judgment in their favor and against the Plaintiff, costs of suit, and such other relief as the Court deems appropriate.

### COUNT VII – State Law Claim
### Civil Conspiracy

93. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:** Defendants incorporate their answers to all of the paragraphs of this Complaint as if fully restated here as their answer to paragraph 93.

94.     As described more fully in the preceding paragraphs, each of the individual Defendants, acting in concert with one another and other co-conspirators, known and unknown, conspired to accomplish an unlawful purpose by unlawful means.

**ANSWER:**     Defendants deny the allegations in paragraph 94.

95.     In furtherance of the conspiracy, Defendants each committed overt acts and were otherwise willing participants in joint activity.

**ANSWER:**     Defendants deny the allegations in paragraph 95.

96.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

**ANSWER:**     Defendants deny the allegations in paragraph 96.

97.     As a direct and proximate result of this misconduct, Plaintiff suffered injuries, including but not limited to severe emotional distress, as is more fully alleged above.

**ANSWER:**     Defendants deny the allegations in paragraph 97.

WHEREFORE, Defendants request judgment in their favor and against the Plaintiff,

costs of suit, and such other relief as the Court deems appropriate.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses to Plaintiff's First Amended

Complaint:

### First Affirmative Defense

Defendants are government officials, namely law enforcement officers, who

perform discretionary functions. At all times material to the events alleged in Plaintiff's

First Amended Complaint, a reasonable law enforcement officer objectively viewing the facts

and circumstances that confronted Defendants, could have believed their actions to be lawful, in

light of clearly established law and the information that Defendants possessed. Defendants are

therefore entitled to qualified immunity as to Plaintiff's federal claims.

### Second Affirmative Defense

Defendants are absolutely immune from civil liability for claims that they committed perjury during their testimony given in judicial proceedings in Plaintiff's underlying criminal case, *Rehberg v. Paulk*, 566 U.S. 356 (2012); *Briscoe v. LaHue*, 460 U.S. 325 (1983); *Jurgensen v. Haslinger*, 295 Ill.App.3d 139 (1998), and for claims that they suborned or conspired to commit perjury. *See House v. Belford*, 956 F.2d 711, 720-21 (7th Cir. 1992).

### Third Affirmative Defense

Plaintiff's claim for deprivation of liberty without cause under the Fourth and Fourteenth Amendments, Count II, is time-barred by the statute of limitations.

### Fourth Affirmative Defense

As to the state law claims, Defendants are not liable for any of the claims alleged because at all times relevant to this complaint these Defendants were public employees, namely law enforcement officers, who were engaged in the execution and enforcement of the law, and none of their acts or omissions in the execution or enforcement of any law constituted willful and wanton conduct. 745 ILCS 10/2-202.

### Fifth Affirmative Defense

As to the state law claims, Defendants are not liable for any of the claims alleged because a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204.

### Sixth Affirmative Defense

As to the state law claims, Defendants are not liable for any of the claims alleged because their decisions regarding the investigation and the arrest of Plaintiff, based upon the information and circumstances known to Defendants at the time, were decisions that involved the

determination of policy and the exercise of discretion for which they are immune from liability. 745 ILCS 10/2-201.

### Seventh Affirmative Defense

As to the state law claims, Defendants are not liable for any of the claims alleged because a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause. 745 ILCS 10/2-208.

### Eighth Affirmative Defense

Plaintiff's intentional infliction of emotional distress claim is time barred by the statute of limitations. The last alleged interaction between Plaintiff and the Defendants other than court appearances was in 2002, and thus the claim accrued at that time. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). Under Section 8-101of the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/8-101, Plaintiff had one year from the date that the injury was received or the cause of action accrued to file this claim against the City or its employees. Plaintiff did not file his original complaint until 2017.

### Ninth Affirmative Defense

As to the state law claim of Intentional Infliction of Emotional Distress (Count V), punitive damages cannot be awarded for this claim under Illinois law. *Knierim v. Izzo*, 22 Ill. 2d 73 (1961).

### Tenth Affirmative Defense

To the extent any injuries or damages claimed by Plaintiff was proximately caused, in whole or in part, by any wrongful conduct on the part of Plaintiff, any verdict or judgment obtained by Plaintiff on any of his claims brought under Illinois law and based on any finding of "reckless" willful and wanton behavior, as opposed to "intentional" willful an wanton behavior,

must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this case. *See Poole v. City of Rolling Meadows*, 167 Ill.2d 41 (1995).

**Eleventh Affirmative Defense**

Plaintiff has a duty to mitigate his damages, and any damages awarded to Plaintiff would be required to be reduced by any amount by which the damages could have been lessened by Plaintiff's failure to take reasonable action to minimize those damages.

**JURY DEMAND**

Defendants Chester Bach, David Evans, and Joseph Frugoli demand a trial by jury.

Dated:  April 22, 2020                    Respectfully Submitted,

                                         /s/Joseph M. Polick
                                         JOSEPH M. POLICK, Atty. No. 6200682
                                         Special Assistant Corporation Counsel
                                         *One of the Attorneys for Defendants*

James G. Sotos
Joseph M. Polick
Jeffrey R. Kivetz
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., Suite 1240A
Chicago, IL 60604
Tel: (630) 735-3300
jpolick@jsotoslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 22, 2020, I electronically filed the foregoing **Defendants' Answer, Affirmative Defenses and Jury Demand to Plaintiff's First Amended Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list:

*Attorneys for Plaintiff:*

Jon Loevy
Arthur Loevy
Anand Swaminathan
Steven A. Art
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
jon@loevy.com
arthur@loevy.com
anand@loevy.com
steve@loevy.com

Jennifer Blagg
Law Office of Jennifer Blagg
1333 W. Devon Ave, Suite 267
Chicago, IL 60660
773-859-0081
jennifer.blagg@yahoo.com

/s/Joseph M. Polick
JOSEPH M. POLICK, Atty. No. 6200682